UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

| | | |
|---|---|---|
| GERALD FREES, # 623134, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:10-cv-609 |
| | ) | |
| v. | ) | Honorable Robert Holmes Bell |
| | ) | |
| PAUL DUBY, et al., | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendants. | ) | |
| _____ | ) | |

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc-2(a). Plaintiff's complaint arises out of conditions of his confinement at the Oaks Correctional Facility (ECF). Plaintiff alleges that he adopted Judaism as his religion in 2009, and that his November 2009 request for a kosher prison diet was denied. Further, he alleges that in May 2010 ECF's Chaplain was unable to provide him with a personal copy of the Torah when he requested one. On June 28, 2010, plaintiff filed this lawsuit naming four defendants: Patricia Caruso, Director of the Michigan Department of Corrections (MDOC); Michael Martin, CFA Special Activities Coordinator; ECF's Warden Cindi Curtain; and ECF's Chaplain Paul Duby. Defendants are sued in their individual and official capacities. Plaintiff's complaint seeks damages and an injunction compelling the MDOC to transfer him to a prison offering a kosher diet menu and provide him with a kosher prison diet. He also asks for a personal copy of the Torah "free of charge."

The matter is before the court cross-motions for summary judgment. (docket #s 37, 40). For the reasons set forth herein, I recommend that plaintiff's claims for injunctive relief be

dismissed as moot, that plaintiff's claims for damages against defendants in their official capacities be dismissed with prejudice because they are barred by Eleventh Amendment immunity, that plaintiff's motion for summary judgment (docket # 37) be denied, that defendants' motion for summary judgment (docket # 40) be granted, and that judgment be entered in defendants' favor on all plaintiff's claims for damages against defendants in their individual capacities because plaintiff did not properly exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a).

## Applicable Standards

A.   Summary Judgment

When reviewing cross-motions for summary judgment, the court must assess each motion on its own merits. *See Federal Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Group*, 415 F.3d 487, 493 (6th Cir. 2005). "'[T]he filing of cross-motions for summary judgment does not necessarily mean that an award of summary judgment is appropriate.'" *Spectrum Health Continuing Care Group v. Anna Marie Bowling Irrevocable Trust*, 410 F.3d 304, 309 (6th Cir. 2005)(quoting *Beck v. City of Cleveland*, 390 F.3d 912, 917 (6th Cir. 2004)).

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Moses v. Providence Hosp. Med. Centers, Inc.*, 561 F.3d 573, 578 (6th Cir. 2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court

"need consider only the cited materials, but it may consider other materials in the record." FED. R. CIV. P. 56(c)(3).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *see* FED. R. CIV. P. 56(e)(2), (3). To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings. *See Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009). The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990). "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'" *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252).

A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). The moving party without the burden of proof needs only show that the opponent cannot sustain his burden at trial. "But where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving

party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)).  The Court of Appeals has repeatedly emphasized that the party with the burden of proof faces "a substantially higher hurdle" and "'must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it.'" *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000))*; Cockrel*, 270 F.2d at 1056 (same).  Accordingly, a summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).  The higher summary judgment standard applies to plaintiff's motion for summary judgment and defendants' motion for summary judgment based on the affirmative defense of plaintiff's failure to exhaust his available administrative remedies as required by 42 U.S.C. § 1997e(a) before filing this lawsuit.

      B.    <u>Exhaustion</u>

         Defendants have asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies.  A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust available administrative remedies.  42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).  A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.  *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734.  "This requirement is a strong one.  To further the purposes behind the PLRA, exhaustion is required even if the prisoner subjectively believes the

remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner[] believes the procedure to be ineffectual or futile." *Napier v. Laurel County, Ky.*, 636 F.3d 218, 222 (6th Cir. 2011) (internal quotations and citations omitted).

In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216. The burden is on defendants to show that plaintiff failed to properly exhaust his administrative remedies. The Supreme Court reiterated that "no unexhausted claim may be considered." 549 U.S. at 220. The Court held that when a prisoner complaint contains both exhausted and unexhausted claims, the lower courts should not dismiss the entire "mixed" complaint, but are required to dismiss the unexhausted claims and proceed to address only the exhausted claims. 549 U.S. at 219-24.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Jones v. Bock*, 549 U.S. at 218-19. In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90; *see Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009). Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a § 1983 action in federal court. 548 U.S. at 90-93; *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011); *see* 42 U.S.C. § 1997e(a). The procedural bar does not apply where the State declines to enforce its own procedural rules. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010).

MDOC Policy Directive 03.02.130 (effective July 9, 2007) sets forth the applicable grievance procedures.  (*See* docket # 41-4 at ID#s 202-08).  In *Sullivan v. Kasajaru*, 316 F. App'x 469, 470 (6th Cir. 2009), the Sixth Circuit held that this policy directive "explicitly required [the prisoner] to name each person against whom he grieved," and it affirmed the district court's dismissal of a prisoner's claim for failure to properly exhaust his available administrative remedies. *Id.* at 470; *see also Hall v. Warren*, No. 09-2400, 2011 WL 4916703, at * 6 (6th Cir. Oct. 18, 2011).

Policy Directive 03.02.130 is not limited to the requirement that the individual being grieved be named in the Step I grievance.  The following is an overview of the grievance process. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his control.  *Id.* at ¶ P.  If the mandatory pre-grievance attempt at resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution.  *Id.*  The Policy Directive also provides the following directions for completing Step I grievance forms: "The issues should be stated briefly but concisely.  Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how).  Dates, times, places, and names of all those involved in the issue being grieved are to be included."  *Id.* at ¶ R (emphasis in original).  Thus, where an individual is not named in the Step I grievance, or his or her involvement in the issue being grieved is not indicated, or the individual is mentioned for the first time during an appeal of a denial of a grievance, the claims against that individual are not properly exhausted.  *See Ketzner v. Williams*, No. 4:06-cv-73, 2008 WL 4534020, at * 16 (W.D. Mich. Sept. 30, 2008) (collecting cases); *accord Sullivan v. Kasajaru*, 316 F. App'x at 470.

The inmate submits the grievance to a designated grievance coordinator who makes an initial determination whether it should be rejected under MDOC policy or assigns it to a respondent. P.D. 03.02.130 at ¶¶ W, X. If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten business days after the response was due. *Id.* at ¶ BB. The respondent at Step II is designated by the policy. The Step II respondent is generally the warden or her designee. *Id.* at ¶ DD. If the inmate is dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶ FF. The Step III appeal form must be sent to the Grievance and Appeals Section within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶ FF. The Grievance and Appeals Section is the Step III respondent. *Id.* at ¶ GG. Time limitations shall be adhered to by the inmate and staff at all steps of the grievance process. *Id.* at ¶ S. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing." *Id.*

Ordinarily, a prisoner must pursue appeals of his grievance through Step III of the administrative process. The Sixth Circuit has "clearly held that an inmate does not exhaust available administrative remedies when the inmate fails entirely to invoke the grievance procedure." *Napier*, 636 F.3d at 224. An argument that it would have been futile to file a grievance does not suffice. Assertions of futility do not excuse plaintiff from the exhaustion requirement. *See Napier*, 636 F.3d at 224; *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir.1999) ("[A]n inmate cannot simply fail to file

-7-

a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see Booth v. Churner*, 532 U.S. at 741 n. 6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

## Proposed Findings of Fact

The following facts are beyond genuine issue. Plaintiff is serving lengthy prison sentences in the custody of the Michigan Department of Corrections (MDOC) on his bank robbery and armed robbery convictions. He is currently an inmate at the Chippewa Correctional Facility (URF). (docket # 63). He is receiving, and has received since June 16, 2011, a kosher diet based on his stated religious preference. (docket #s 57, 61). There is no evidence that plaintiff lacks access to a Torah. (*see* docket # 61).

On October 2, 2009, plaintiff signed a "Declaration of Religious Preference" notifying the MDOC that he had changed his religious preference to Judaism. (docket # 1-1 at ID # 6). In November 2009, plaintiff sought permission to eat from a special religious diet menu. On February 10, 2010, ECF's Chaplain Duby sent a memorandum to plaintiff advising him that Special Activities Coordinator Michael Martin had denied plaintiff's request for a kosher diet. (docket # 1-2 at ID # 7).

On April 30, 2010, plaintiff filed a grievance against Chaplain Duby and Special Activities Coordinator Martin based on the February 2010 denial of his request for a kosher diet. (Grievance No. ECF-2010-04-1548-28E, docket # 41-2 at ID # 192). Plaintiff's grievance was rejected at Step I because it was untimely (*Id.*), and the rejection was upheld on the same basis at

Steps II and III of the grievance process.  (docket # 41-2 at ID#s 196-97).  Plaintiff did not pursue

any other grievance through a Step III decision.  (Stapleton Aff. ¶¶ 5-6, docket # 41-3 at ID # 200).

On May 14, 2010, plaintiff sent a kite (informal complaint) to Chaplain Duby asking

that he be "issue[d] a Torah."  Chaplain Duby responded that he did not currently have any Torahs,

but he gave plaintiff the name and address of a private organization that might send plaintiff a Torah

if he wrote and requested one.  (docket # 1-5 at ID # 10).  Plaintiff sent a second kite to Chaplain

Duby on May 17, 2010.  (docket # 1-5 at ID # 10).  Chaplain Duby responded with a memorandum

explaining to plaintiff that the MDOC does not buy the religious books handed out to prisoners.

These books are donated by outside organizations.  Chaplain Duby provided plaintiff with the names

and addresses of two private organizations that plaintiff could write to and request a Torah.  (docket

# 1-6 at ID # 11).

On June 28, 2010, plaintiff filed this lawsuit.


### Discussion

1.    Mootness

Since the time of filing his complaint, plaintiff was transferred to a new prison, the

Chippewa Facility, where he is receiving a kosher diet.  His claims for injunctive relief against the

present defendants are therefore moot.  *See Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *see

also Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010).


2.    Eleventh Amendment Immunity

-9-

All plaintiff's claims for damages against defendants in their official capacities are barred by Eleventh Amendment immunity. A suit against a state officer in his official capacity is simply another way of pleading an action against the state. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment generally[1] bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Skinner v. Govorchin*, 463 F.3d 518, 524 (6th Cir. 2006). The State of Michigan has not consented to civil rights suits in federal court. *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004). "States, in accepting federal funding, do not consent to waive their sovereign immunity to private suits for money damages under RLUIPA . . . ." *Sossamon v. Texas*, 131 S. Ct. 1651, 1663 (2011). Furthermore, States and their departments are not "persons" within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. at 71. Defendants are entitled to judgment in their favor as a matter of law on plaintiff's claims for damages against them in their official capacities. I recommend that all plaintiff's claims against defendants in their official capacities be dismissed with prejudice because they are barred by Eleventh Amendment immunity.

---

[1] The well-recognized exception to the general rule is an action for prospective, non-monetary relief such as an injunction against a state officer in his or her official capacity based upon a claim that the state officer's action is unconstitutional. *See Ex Parte Young*, 209 U.S. 123 (1908).

3.      Exhaustion of Administrative Remedies

Defendants have has raised the affirmative defense that plaintiff did not properly exhaust his administrative remedies against them as required by 42 U.S.C. § 1997e(a).  Exhaustion is mandatory.  *Woodford*, 548 U.S. at 85.  "[N]o unexhausted claim may be considered."  *Jones v. Bock*, 549 U.S. at 220.  Plaintiff's grievance against defendants Duby and Martin was rejected because it was untimely.  He did not file any grievance against defendants Caruso and Curtin, much less pursue it through a Step III decision.  Plaintiff did not properly exhaust any claim against defendants before filing this lawsuit.  *See Woodford*, 548 U.S. at 90, 93; *Siggers*, 652 F.3d at 692.


**Recommended Disposition**

For the foregoing reasons, I recommend that plaintiff's claims for injunctive relief be dismissed as moot, that plaintiff's claims for damages against defendants in their official capacities be dismissed with prejudice because they are barred by Eleventh Amendment immunity, that plaintiff's motion for summary judgment (docket # 37) be denied, that defendants' motion for summary judgment (docket # 40) be granted, and that judgment be entered in defendants' favor on all plaintiffs claims for damages against defendants in their individual capacities.


Dated:   November 2, 2011              /s/  Joseph G. Scoville                                      
                                                         United States Magistrate Judge

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas*

*v. Arn*, 474 U.S. 140 (1985); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir.), *cert. denied*, 129 S. Ct. 752 (2008); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).   General objections do not suffice.  *Spencer v. Bouchard*, 449 F.3d 721, 724-25 (6th Cir. 2006); *see Frontier*, 454 F.3d at 596-97; *McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006).